IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| TIM B. VALMONT; and LINDA VALMONT, | |
| Plaintiffs, | CIVIL ACTION NO.: 4:22-cv-305 |
| v. | |
| HSL HUSUM SHIPPING LTD.; and HAMMONIA REEDEREI GMBH & CO. KG, | |
| Defendants. | |

**O R D E R**

This is a negligence case that arises out of injuries allegedly sustained by Plaintiff Tim Valmont while he was working aboard the M/V Hammonia Husum (the "Vessel"). (Doc. 1-1.) Presently before the Court is Defendants HSL Husum Shipping Ltd. ("HSL Husum") and Hammonia Reederei GMBH & Co. KG's ("Hammonia") Motion for Summary Judgment for lack of personal jurisdiction, in which they argue, *inter alia*, that they did not purposefully avail themselves of the benefits and protections of Georgia law. (Doc. 20.) Plaintiffs filed a Response in Opposition, (doc. 34), and Defendants filed a Reply, (doc. 37). Plaintiffs then filed two Sur Replies, (docs. 43, 47), and Defendants filed an additional Sur Reply, (doc. 45). For the reasons stated herein, the Court **DENIES** Defendants' Motion for Summary Judgment. (Doc. 20.)

## BACKGROUND

This case arises from an injury Plaintiff Tim Valmont ("Valmont")[1] sustained while working as a stevedore aboard the Vessel, which was owned and managed by Defendants HSL

---

[1] While both Plaintiffs have the last name Valmont, the Court refers only to Timothy Valmont as "Valmont," as this Order focuses almost exclusively on him.

Husum and Hammonia. (Doc. 1-1, pp. 5–10.) On or about January 4, 2020, Valmont was working as a longshore worker technician on the Vessel while it was in port at the Garden City Terminal in Savannah, Georgia. (Doc. 34-9, p. 14.) Plaintiffs allege that, while working on the Vessel, Valmont injured his spine when he attempted to lift a hinged metal hatch cover that had become rusted and stuck. (Id.)

Defendants are the ownership and management entities for the Vessel. (Doc. 20-4, p. 1; Doc. 34-9, p. 3.) HSL Husum is a company organized and incorporated in the Isle of Man, and Hammonia is a German company with its principal place of business in Hamburg, Germany. (Doc. 34-9, pp. 3–4.) Defendants operate under time charter agreements through which they charter the Vessel to time-charterers.[2] (Id. at pp. 4–5; see generally doc. 20-3.)

At the time of the incident, the Vessel was chartered to Maersk Line A/S trading as Sealand Copenhagen (the "Charterer") pursuant to a time charter agreement (the "Charter") between Defendants and the Charterer. (Doc. 20-4, p. 2; doc. 20-1, pp. 5–24.) Under the Charter, Defendants earned *per diem* fees for chartering the Vessel, regardless of its destination, and Defendants provided the Vessel's crew. (Doc. 34-9, pp. 4–5.) In relevant part, the Charter notes that "[n]othing contained in this [C]harter . . . shall be construed as a demise of the Vessel to the Charterers[,] and the Owners remain responsible for the navigation thereof at all times." (Doc. 20-1, p. 14.) The Charter further states that "all pilotage, towage and other services to the Vessel to assist with navigation shall be engaged as agents of the Owners who, for the purposes of this Charter . . . , shall remain responsible for the due performance thereof." (Id.) Furthermore, the

---

[2] "A time charter agreement is a contract of affreightment to use a ship in order to ship goods for a specific time period under which the carrier makes the ship's capacity available to the time charterer for such purpose." Roberson v. Seaspan Corp., 521 F. Supp. 3d 1325, 1329 (S.D. Ga. 2021) (citing Thomas J. Schoenbaum, 2 Admiralty & Maritime Law, § 11:5 (6th ed. 2018)).

2

Charter notes that "[t]he Owners shall remain responsible for and shall indemnify the Charterers against any claims for personal injury, howsoever caused, incurred on or about the Vessel unless caused by the negligence of the Charterers." (Id. at p. 15.)

Plaintiffs originally brought suit under 28 U.S.C. § 1333, general maritime law, and Georgia law in the State Court of Chatham County, alleging two general causes of action against Defendants: negligence and loss of consortium. (Doc. 1-1, pp. 7–10.) Defendants subsequently removed the case to this Court. (Doc. 1.) Plaintiffs allege that Defendants are liable for Valmont's injuries under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (the "LHWCA")[3] because Defendants negligently "fail[ed] to exercise reasonable care to properly maintain the [V]essel and its equipment." (Doc. 1-1, p. 7.) According to Plaintiffs, "Defendants were . . . responsible for . . . the safe condition of the [V]essel and breached their duties . . . by failing to properly maintain and repair the . . . hatch cover or otherwise keep the area safe." (Id. at pp. 7–8.) Plaintiffs seek damages for the alleged resulting injuries and loss of consortium. (Id. at p. 9.) Defendants now move for summary judgment for lack of personal jurisdiction. (See doc. 20.) Defendants primarily contend that their lack of purposeful availment of Georgia's laws and privileges defeats personal jurisdiction under both Georgia's Long Arm Statute, O.C.G.A. § 9-10-91, and the federal Constitution. (Id. at 2.)

**STANDARD OF REVIEW**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

---

[3] Although Plaintiffs' Complaint does not explicitly invoke the LHWCA, (see generally doc. 1-1, pp. 5–10), Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment acknowledges that Plaintiffs' claims are governed by the LHWCA because, "[w]hen it comes to suing vessel owners for negligence, 'the LHWCA expressly pre-empts all other claims,'" (doc. 34, pp. 1–2, n.1 (quoting Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 818 (2001))).

3

R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (emphasis and citation omitted).

In the specific context of "resolving a motion for summary judgment based upon lack of personal jurisdiction, the court is required to accept as true the allegations of plaintiff's complaint

4

and deny the motion if these allegations state a prima facie case of jurisdiction." Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1356 (11th Cir. 2000) (citing Bracewell v. Nicholson Air Servs., Inc., 748 F.2d 199, 1504 (11th Cir. 1984)). The plaintiff establishes a prima facie case by presenting "enough evidence to withstand a motion for directed verdict." Madera v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). A party presents enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." Walker v. Nations Bank of Fla. N.A., 53 F.3d 1548, 1555 (11th Cir. 1995).

In assessing the allegations and evidence on a motion for summary judgment for lack of personal jurisdiction, "[i]f there is conflict between the plaintiff's and the defendant's allegations or in the evidence, the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor." Ruiz de Molina, 207 F.3d at 1356. Thus, the facts presented in the plaintiff's complaint are taken as true to the extent they are uncontroverted. Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990). If the defendant submits affidavits challenging the allegations in the complaint, however, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010). If "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Id.

**DISCUSSION**

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the

United States Constitution." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). The Court will address each issue in turn.

**I.      Georgia's Long-Arm Statute**

The first question the Court must ask is whether jurisdiction would be appropriate under Georgia's long-arm statute. "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." Lockard v. Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir. 1998).

As pertinent here, the Georgia long-arm statute provides:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
> (1) Transacts any business within this state;
> (2) Commits a tortious act or omission within this state. . . ;
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . .

O.C.G.A. § 9-10-91(1)–(3). For years, the Eleventh Circuit Court of Appeals followed the interpretation that "Georgia's long arm statute confers in personam jurisdiction to the maximum extent allowed by the due process clause of the federal Constitution." Francosteel Corp. v. M/V Charm, 19 F.3d 624, 627 (11th Cir. 1994). In 2005, however, the Georgia Supreme Court clarified the status of the state's long-arm statute, explaining that it "requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, 620 S.E.2d 352, 353 (Ga. 2005) (quoting Gust v. Flint, 356 S.E.2d 513, 514 (Ga. 1987)); see also Diamond Crystal Brands, 593 F.3d at 1259 (recognizing the holding in Innovative Clinical that the Georgia long-arm statute "imposes independent obligations that a plaintiff must establish for the

6

exercise of personal jurisdiction that are distinct from the demands of procedural due process"). Georgia's long-arm statute "must be read literally," as it "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Diamond Crystal Brands, 593 F.3d at 1259. Accordingly, "the exercise of personal jurisdiction in Georgia requires a court to find that at least one prong of the long-arm statute is satisfied." Id. at 1260.

Plaintiffs contend that, "[w]hile subsections (1) and (3) [of Georgia's long-arm statute] provide other viable hooks [for personal jurisdiction over Defendants], Subsection (2) of Georgia's long-arm statute is a clear hook," because Defendants "[c]ommit[ted] a tortious act or omission within this state" through the actions of the Vessel's crew. (Doc. 34, p. 10 (citing O.C.G.A. § 9-10-91(2)).) While Section 905(b) of the LHWCA authorizes suits by longshoremen injured due to the negligence of a shipowner, see generally 33 U.S.C. § 905(b), the United States Supreme Court has significantly narrowed the duties a shipowner or charterer owes to longshoremen under the LHWCA. See Scindia Steam Nav. Co., Ltd. v. De Los Santos, 451 U.S. 156, 164–72 (1981). These duties, now known as the Scindia duties, include (1) the turnover duty, (2) the active control duty, and (3) the duty to intervene. Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 98 (1994).

Although Plaintiffs argue that Defendants breached each of the Scindia duties, Plaintiffs focus primarily on the turnover duty and the corollary duty to warn. (Doc. 34, p. 2.) Plaintiffs allege that Defendants breached the turnover duty because they negligently failed to maintain the hatch cover and failed to warn of its defective condition.[4] (Doc. 1-1, p. 8.) Plaintiffs argue that,

---

[4] Violations of Scindia duties, such as those resulting from the negligent failure to properly maintain, are generally the responsibility of the vessel owners rather than the vessel's charterers. See Scindia Steam Nav. Co., 451 U.S. at 156–157 ("A *shipowner* has a duty to have the ship and its equipment in such condition that the stevedore may carry on its cargo operations with reasonable safety; and if the shipowner fails at least to warn the stevedore of hidden danger which was known to the shipowner . . . he is liable if his negligence causes injury to a longshoreman.") (emphasis added).

7

by breaching the turnover duty, Defendants committed acts and omissions that satisfy O.C.G.A. § 9-10-91(2). (Doc. 34, pp. 9–11.) Defendants, however, assert they cannot have committed a tort in Georgia, since "the maintenance and inspection pertaining to the subject hatch would have happened well outside of Georgia." (Doc. 20, p. 3.) The Court disagrees.

The turnover duty requires a vessel "to turn over the ship . . . in such condition that an expert and experienced stevedoring contractor . . . will be able by the exercise of ordinary care to carry on cargo operations with reasonable safety." Howlett, 512 U.S. at 98 (internal quotations omitted). Furthermore, "[a]s a corollary to the turnover duty," the "duty to warn" "requires the vessel to warn the stevedore of any hazards on the ship or with respect to its equipment, so long as the hazards are known to the vessel or should be known to it in the exercise of reasonable care." Id. at 98–99 (internal quotations omitted).

Importantly, "[t]he turnover duty and the turnover duty to warn relate to the condition of the ship *upon commencement of stevedoring operations*." Chapman v. Bizet Shipping, S.A., 936 F. Supp. 982, 985 (S.D. Ga. 1996) (citing Howlett, 512 U.S. at 98) (emphasis added). In other words, "a breach of the turnover duty must occur *at the moment of turnover*," which cannot possibly occur *before* the vessel docks. Wilkinson v. FA Vinnen & Co., No. CV419-112, 2021 WL 1085333, at *7 (S.D. Ga. Mar. 18, 2021) (quoting Washington v. Nat'l Shipping Co. of Saudi Arabia, 374 F. Supp. 3d 1339, 1354 (S.D. Ga. 2019), aff'd, 836 F. App'x 846 (11th Cir. 2020)); cf. Mosley v. Ceres Marine Terminals, Inc., 576 F. Supp. 3d 1358, 1365 (S.D. Ga. 2021) (finding no violation of the turnover duty where the hazard certainly arose *after* the turnover).

Here, Plaintiffs allege the turnover duty was breached when Defendants turned over the Vessel with a hatch that was "poorly maintained, rusty[,] and . . . stuck." (Doc. 1-1, p. 7.) While Defendants argue that the conduct which led to the hatch being poorly maintained occurred prior

to docking in Georgia, (doc. 20, pp. 12–13), this is irrelevant to the inquiry here because the turnover duty is only breached, and the tort necessarily committed, at the moment the vessel is turned over to the stevedore.[5]

Defendants rely on Exceptional Mktg. Grp., Inc. v. Jones, 749 F. Supp. 2d 1352, 1363 (N.D. Ga. 2010), and Askue v. Aurora Corp. of Am., No. 1:10-CV0948-JEC, 2012 WL 843939, at *4 (N.D. Ga. Mar. 12, 2012). Defendants misconstrue what is at issue in this case. In Exceptional Marketing, the defendants, while in Mexico, tortiously solicited the plaintiff's former client, 749 F. Supp. 2d at 1363, and in Askue, the plaintiffs sued on a theory of products liability after a paper shredder manufactured in Taiwan later harmed their daughter in Georgia, 2012 WL 843939, at *1. In both cases, the torts at issue were indisputably committed outside the state, and any resulting tortious injuries were suffered in Georgia through no choice of the defendants. See Exceptional Marketing, 749 F. Supp. 2d at 1363 ("[N]either [defendant] has committed any act or omission in Georgia. Still, the [p]laintiff argues that the [d]efendants are subject to personal jurisdiction because [the plaintiff] sustained an injury in Georgia. This argument is without merit."); Askue, 2012 WL 843939, at *4 ("Only the alleged tortious injury occurred within Georgia."). These inapposite cases deal with neither the nuanced Scindia duties nor maritime law generally. Here, the tort at issue is a breach of the turnover duty, which necessarily occurs at the moment the Vessel is turned over to the stevedore (here, undisputedly Savannah, Georgia).

Moreover, Plaintiffs allege that Defendants breached the corollary duty to warn Valmont of the hazardous condition. (Doc. 1-1, p. 8.) Again, like the turnover duty, the "duty to warn relate[s] to the condition of the ship upon commencement of stevedoring operations," which here,

---

[5] Indeed, Defendants concede that the hatch, if rusty, would have rusted before docking. (See doc. 20-4, p. 5.) This only bolsters Plaintiffs' position that the allegedly hazardous condition would have existed at the moment of turnover.

occurred in Savannah, Georgia. Chapman v. Bizet Shipping, S. A., 936 F. Supp. 982, 985 (S.D. Ga. 1996) (citing Howlett, 512 U.S. at 98). Because the failure to warn, a tort itself, necessarily would have occurred in Georgia, Plaintiffs have alleged that Defendants "[c]ommit[ted] a tortious act or omission within this state," satisfying the Georgia long-arm statute. O.C.G.A. § 9-10-91(2).

## II.  Procedural Due Process

The next step of the Court's two-step inquiry is ensuring that the exercise of jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. United Techs. Corp., 556 F.3d at 1274; Diamond Crystal Brands, 593 F.3d at 1267 ("Having found that Georgia's long-arm statute permits jurisdiction, we reach the jurisdictional analysis under the Due Process Clause of the Fourteenth Amendment.").

The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments imposed by foreign sovereigns. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72 (1985). To conduct a due process analysis, the Court first must find "that the nonresident defendant purposefully established 'minimum contacts' with the forum state such that the defendant 'should reasonably anticipate being haled into court there.'" Francosteel Corp. v. M/V Charm, 825 F. Supp. 1074, 1077 (S.D. Ga. 1993), *aff'd sub nom.* Francosteel Corp., Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange, 19 F.3d 624 (11th Cir. 1994) (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Second, the Court must find that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

"It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the

benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, *reh'g denied*, 358 U.S. 858 (1958). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Burger King, 471 U.S. at 475 (internal quotations omitted). Jurisdiction is proper only where the defendant's contacts with the forum proximately result from defendant's own actions that create a "substantial connection" with the forum state. Id. (quoting McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957)). "Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of personal jurisdiction is not the ability to see that the acts of third persons may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 258 (11th Cir. 1996).

In the Complaint, Plaintiffs allege that Defendants "own, manage, operate, direct, and crew [the] [V]essel[] . . . and transact business in the Port of Savannah, Chatham County, Georgia, on a routine, regular, and systematic basis." (Doc. 1-1, p. 6.) Plaintiffs allege that Defendants negligently "fail[ed] to equip, operate, maintain, inspect, and replace damaged or defective vessel equipment," which led to Valmont's injuries. (Id. at pp. 3–4.) In their Motion, Defendants primarily contend that due process cannot be satisfied because they did not purposefully avail themselves of the right to do business in Georgia but were merely "along for the ride with the Charterer." (Doc. 20, p. 8.) Specifically, Defendants assert that the Vessel was "on time charter to a nonparty at the time of the alleged incident," and that "Defendants had no control over the ports on which the [Vessel] called, including . . . Savannah." (Doc. 5, p. 2.) Defendants further describe their ties to this forum as "vanishingly thin," arguing it is the Charterer, *not* Defendants, "who direct where the Vessel will go." (Doc. 20, pp. 1, 3.) To support these contentions, Defendants offer affidavits from Frank Braune, the general manager of Hammonia, and Parani

11

Vaithinathan Singaravelu, on behalf of HSL Husum, who both maintain that Defendants "had no authority to direct the Vessel to Georgia or any other port." (Doc. 20-2, p. 3; doc. 20-1, p. 3.)

In Response, Plaintiffs highlight that the Vessel is one of the "vessels with the most port calls at Savannah, Georgia," identifying "at least [thirty-two] regular port calls." (Doc. 34, pp. 2–3; doc. 20-1, p. 2.) Plaintiffs point to evidence from March 1, 2019, to October 24, 2023, that shows the Vessel to have the twelfth most Savannah port calls of all 2,380 vessels with Savannah port calls in the same time frame. (Doc. 34, p. 3); IMPORTINFO: SIMPLIFIED TRADE DATA, Port of Savannah, Georgia, https://www.importinfo.com/port/savannah-georgia/1703 (last visited Dec. 19, 2023). Other courts have cited the frequency of port calls within the forum to determine whether the foreign vessel owners purposefully availed themselves of the benefits and protections of the forum state's law. See Fortis Corp. Ins. v. Viken Ship Mgmt., 450 F.3d 214 (6th Cir. 2006) (specifically considering "frequent calls to the[ forum] ports" as a factor in determining that the defendants' actions were "sufficient to establish purposeful availment of the forum state").

Furthermore, Plaintiffs argue that Defendants "specifically contracted to continue with operational control." (Doc. 34, p. 3.) Plaintiffs cite to the Charter's language, which states, "[n]othing contained in this Charter . . . shall be construed as a demise of the Vessel to the Charterers and [Defendants] remain responsible for the navigation thereof at all times." (Id. at 6; see doc. 20-1, p. 14.) This language distinguishes the Charter at issue from a demise charter. A demise or "bareboat" charter is when the charterer "contracts for the vessel itself and assumes exclusive possession, control, command and navigation thereof for a specified period." McAleer v. Smith, 57 F.3d 109, 112 (1st Cir. 1995) (quoting Stephenson v. Star–Kist Caribe, Inc., 598 F.2d 676, 679 (1st Cir. 1979)). Such charters are "tantamount to, though just short of, an outright transfer of ownership." Id. at 113 (quoting Guzman v. Pichirilo, 369 U.S. 698, 699–700, 8 L.Ed.2d

205 (1962)). Other courts have found that specific personal jurisdiction over foreign vessel owners does not exist in cases where the vessel owners operate underdemise charters. See Am. Home Assurance Co. v. M/V One Helsinki, 546 F. Supp. 3d 90, 96 (D. Mass. 2021) (finding the foreign vessel owners did not purposefully avail themselves of the forum's laws where the owners, under a bareboat charter, relinquished "exclusive possession, control, command and navigation [of the vessel]"). Here, however, Defendants explicitly retained control under the Charter and even clarified that "[n]othing contained in this Charter . . . shall be construed as a demise of the Vessel to the Charterers," (doc. 20-1, p. 14).

Plaintiffs also cite the Charter's language that "[t]he Owners shall remain responsible for . . . any claims for personal injury," and "all pilotage, towage and other such services to the Vessel to assist with navigation shall be engaged as agents of the Owners who . . . shall remain responsible for the due performance thereof." (Doc. 20-1, pp. 14–15.) Indeed, it favors a finding of purposeful availment that Defendants "had ample opportunity to pass on the costs of potential liability to [the Charterer] if they desired, or to require that [the Charterer] avoid United States ports completely," and chose not to do so. Fortis, 450 F.3d at 221.

Although the Court is unable to find analogous circumstances in this Circuit, the Court is persuaded by Mylonakis v. M/T GEORGIOS M., 909 F. Supp. 2d 691 (S.D. Tex. 2012). In Mylonakis, the defendants were foreign vessel owners who allegedly violated the Act to Prevent Pollution from Ships by using a bypass pipe to unlawfully discharge waste into the ocean while at port in Texas. Id. at 701. Like here, the defendants in Mylonakis argued "that they are not subject to specific jurisdiction because, as manager and owner . . . of the time-chartered vessel, they were not involved in decisions affecting the vessel's ports of call and did not direct the vessel to any specific port." Id. at 708. This was of no consequence, however, because the "[p]laintiff alleged

that the . . . corporate defendants were responsible for the . . . violations found aboard the [vessel] while the vessel was physically present in [the forum]." Id. The same is true here.

Simply put, Defendants "purposely availed [themselves] of [the forum] when [their] employees voluntarily entered the jurisdiction aboard the vessel. Although [the defendant] had no control over the vessel's course, the ship management agreement contemplated that the ship would travel to locations throughout the world." Carmona v. Leo Ship Mgmt., Inc., 924 F.3d 190, 196 (5th Cir. 2019). Likewise, here, Singaravelu, on behalf of HSL Husum, confirmed in his deposition that "the [V]essel . . . is permitted by the charter party to sail . . . to any port they're not specifically excluded from sailing to," and Savannah, Georgia is not an excluded port. (Doc. 34-3, p. 16.) Regardless of which party specifically directed the vessel to Savannah, Georgia, what matters is that the torts allegedly committed by Defendants (here, Scindia duty violations) occurred in Savannah, Georgia. Because the "[Defendants] are responsible for the allegedly tortious actions of the vessel's crew while in [the forum], they are subject to personal jurisdiction in [the forum]." Mylonakis, 909 F. Supp. 2d at 709; see also Ortega v. Seaboard Marine Ltd., 400 F. Supp. 2d 987, 990 (S.D. Tex. 2005) ("Because [the defendant] employed the captain and crew, it cannot escape litigation arising out of the allegedly tortious acts of those employees acting within the scope of their employment."). Accordingly, in light of Plaintiffs' allegations, the Court finds that Plaintiffs have sufficiently alleged facts indicating that Defendants purposefully availed themselves of the benefits and protections of Georgia law. In conjunction with the Vessel's frequent Savannah port calls and the Defendants' decision to not pass along any control or liability under the Charter, the Defendants' responsibility for the Scindia violations aboard the Vessel while the Vessel was physically present in the forum sufficiently establishes purposeful availment by Defendants.

In addition to minimum contacts, the exercise of jurisdiction must also comport with traditional notions of fair play and substantial justice.  Burger King, 471 U.S. at 476.  In this analysis, the Court must look to "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." Id. at 477 (internal quotations omitted).  Defendants have not argued, and the Court sees no reason to find, that any of these factors weigh against the Court's exercise of jurisdiction in this case.

## CONCLUSION

Based upon the foregoing, the Court finds that Plaintiff has presented a prima facie case of jurisdiction.  Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment for lack of personal jurisdiction.  (Doc. 20.)

**SO ORDERED**, this 5th day of January, 2024.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA